The first case is Housey v. Procter & Gamble. Good morning, Judge Parker, Chief Judge Livingston, and Judge Nathan. May it please the court, my name is Michael Reese, and I am counsel for Plaintiff Appellant Belinda Housey. We are here today on appeal of the lower court's dismissal with prejudice of plaintiff's complaint. We now ask the court to reverse the dismissal and hold that the complaint sufficiently states a claim. Alternatively, we ask that the portion of the decision denying leave to amend without any reason at all from the lower court be reversed, and that plaintiff be allowed to file an amended complaint that addresses any deficiencies in the pleadings. The standard before your honors is de novo review of a motion to dismiss decision. Likewise, on a motion to dismiss, the standard as set by this circuit, the Second Circuit, is that the court construes the complaint liberally, accepting all factual allegations and the complaint is true, and drawing all reasonable inferences in the plaintiff's favor. That's the Alex v. McKenzie case, 23 F. 4th, 196, 2022 from this circuit. We are here because the district court failed to follow the proper standard, failed to follow that standard and accept all factual allegations and the complaint is true. Indeed, we're here because a bizarre situation developed below in the lower court where the district court judge made herself a fact witness. Well, before you get to that point, what is it in the complaint that suggests that this specific toothpaste, the 3D white charcoal toothpaste, contains a sufficient amount of charcoal as to be incapable of safe enamel whitening? The studies that we cite in the complaint, the British Dental Journal, the Journal of American Dental Association, and other, both scientific journals as well as other journals, suggest that charcoal in a toothpaste like this will abrade the enamel. In any amount? That's our understanding, Your Honor, is in any amount. So, one-tenth of one percent, the minimum amount? We understand why this toothpaste claims to be a whitening toothpaste is because of the charcoal in it. And for the charcoal to be able to do that, it needs to scrub the teeth, and that causes abrasion. That charcoal, that would be a different case. But is it your position that any amount of charcoal makes this product dangerous? We don't know the specific amount of charcoal in this product. We could find that out. The court below criticized us for that and said we should have hired- So you didn't know that when you filed the complaint? We did not know the amount of charcoal when we filed the complaint. All that we knew is- Is it your position that any amount of charcoal makes this product unsafe? Yes, Your Honor. And specifically, that's tied into what this product is supposed to do. And the scientific journals we cite talk about the way that charcoal in toothpaste works is by abrading the enamel. That's how it scrubs the stains from the teeth. But that also causes damage to the enamel. And as we plead in the complaint, our client's teeth were abraded by this product. The court below criticized us, saying we should have had more detail. I'm not quite sure exactly what more detail we can add, other than saying the teeth were abraded. But we could add photographs of her teeth. Looking at the studies that you supplied, assuming we could properly look at those, I didn't see anything in the studies that supported the allegation that any amount of charcoal makes the product unsafe. It is correct, Your Honor, that none of the studies cite this product specifically. They talk about charcoal products in general. They do talk about charcoal in toothpaste. But the point is, for the toothpaste to be able to do what it's advertised to, which is whiten your teeth, the charcoal must be able to work on those teeth. And if it's working to clean the teeth, it's also working to abrade the enamel. But maybe more to your point, Your Honor, is while we believe that the complaint sufficiently pleads a claim, and for the same exact reasons that these same studies were cited by the court in the Patelos v. Hello Products case, which is a very similar case, just a different product line, but charcoal toothpaste, the same studies were cited by Judge Engelmeyer in the Southern District of New York, saying those sufficiently gave sufficient support for a plausible claim. So for the court to fault us, the lower court to fault us for citing these same studies for that same proposition, and then to dismiss the complaint without prejudice, we think is reversible error. And we would note that it was dismissed without prejudice with no reason. And if you look at the transcript, the court actually states what it thought we needed to do. This is the transcript of the court, and this is at page 87 of the record. The court stated, you could have hired an expert to tear this thing apart, re-engineer it and find out what's in there, and then have some real science to tell us what the amount and type of charcoal that's in here actually causes harm. So again, while our position is that the complaint as currently pled is sufficient, if your honors believe that it's insufficient, even though the Patelos case found that this type of evidence, this exact evidence is sufficient, we can do what the lower court asked us to do if we're given the ability to do that. We have a lab signed up to reverse engineer this product. I have dentists I've spoke to. I can put in the dental records from the client. I can put in pictures of her mouth. The reality is that we can have a lot more allegations, and we're not given the opportunity to do that. I would also note, I want to go to the price premium, because the court- Before you do that- Yes, your honor. What exactly is the deceptive act? On the front of the packaging itself, and I brought the packaging here, it says right on the front of the packaging- Can we look at that? Yes, you may, your honor. No, I mean- It's also part of the court's opinion, but I'm happy to provide these to you. It says the name, enamel safe whitening. So we're saying the enamel safe is a misleading statement because the charcoal actually causes damage to the enamel. And you have three of those? Three of these boxes? I have many of them. I have two of them with me here. But why this is important is, you know, the district court made itself a fact witness and stated that it went to two stores with, I think, the law clerk, because if you'll read the transcript, the court actually turns to the law clerk and says, that's right, isn't that what we observed? So not only is it just the court's observations, but it's the law clerk's observations, which we had no chance to examine or cross-examine. I do not want to have to cross-examine a district court judge. We should not be put in that position. But the reality is, a district court judge shouldn't make itself a fact witness. And why this is important is the district court- Well, then you're suggesting it was improper for the district court to look at the boxes. No. What I'm suggesting is that it was improper for the district court to go to a CVS store- And get boxes and look at them. And get boxes and then look at the ingredient list and then make conclusions based on the ingredient list and look at the pricing and make conclusions based on the pricing without allowing us to test that. Because the reality is- What do you mean, test it? So, for example, the district court said, all the pricing is the same. And I started to- Mark him down on his website. If you actually go to a CVS store, the pricing is different. And I think this is where the district court erred. And if this had been an actual fact witness, where I would have taken that person's deposition, this would have come out. But, of course, when I started to talk to the court about this, it shut me down. It said, take my word at it. Don't question me on this. Of course, unless we agree with you that there's a materially misleading claim, a deceptive claim of some sort. It doesn't really matter about the price premium, right? It doesn't matter as much about the price premium. But I would just- This is just to underscore why it was improper for the way that this proceeded. The pricing of this charcoal product, while maybe the same per package, it's actually less per ounce. I mean, sorry, it's more per ounce. It's $2.22 per ounce. With the other 3D whitings, it's $1.84 per ounce. So there's a $0.38 per ounce price premium. And when I asked the district court, I said, are you saying that the price is the same for the same volume? Because that's what you have to look at. Are you getting the exact same volume of product? And then she said, don't, that's not what I said. But if we're even using her comparators, and she's not an economist, and usually this is, I think this is your point, Chief Judge Livingston, is this is really an area for experts. Not the lawyers, not the judge to come in. It's an economist that's usually- Just to be specific and focused on your allegations, since that's what we should be focused on for purposes of a motion to dismiss. Yes, Your Honor. What, because it feels a little bit loosey-goosey at points both in the complaint and in the briefing. What is the price differentiation argument that you're making? If your deceptive act argument is, it says it whitens without abrasion, but the inclusion of charcoal means there's abrasion. What is your price differentiation argument? So our comparator in the complaint was a Crest toothpaste product that did not make the enamel safe whitening claim. So we're saying, if you compare the two products, one which has the deceptive claim and one that does not have the deceptive claim, there is a price premium compared to those products. The lower court, based upon its own factual observations at the stores it visited, said, well, I think that's the wrong comparator. You need to compare it to other 3D white products, which also make the enamel safe whitening claims. But my point is, I just made, Your Honor, there's a price premium with those comparators. So we think it should be another product that doesn't make the deceptive claim, but the court said we should have looked at products that do make the same claim. But even there, you have a price premium. I would also point out, the district court said, based upon my observations, the products are completely identical and stated, in every other, this is what the district court said, I visited CVS and I looked at the display of the toothpaste and saw several others. I'm just going to use my terminology. I saw in them differences in what I call flavors. But for the charcoal powder and everything else, every other respective ingredients are identical. And I'm making this point because it underscores, that's just wrong. If you look at the products that the judge looked at, charcoal has water, sorbital, disodium, pyphosphorate, carbon air, charcoal powder. Glamorous white, which is one of the examples used by the court, has very different ingredients. Glycerin, which is not in the charcoal product. Sodium hexamethylphosphate, which is not in. So your argument here on the procedural error, I think at its core, is that under 12D, this should have been converted. I mean, setting aside the unusualness of the district court engaging in this type of assessment of relevant facts. Just as a straight procedural matter, under 12D, we're going beyond the allegations and the complaints. So it should have been converted to a summary judgment motion with you having an opportunity to respond beyond the complaint and show that there were material disputes of fact that mattered. That's absolutely right. The district court basically turned this into a summary judgment motion without allowing us to introduce any evidence. And was relying upon her own personal observations as the evidence in support of the defendant's case. Thank you. Thank you, Your Honor. Good morning, Your Honor. May it please the court. David Zients on behalf of Procter & Gamble. As my friend just confirmed, the plaintiff here is making a very big claim. The inclusion of charcoal in any amount in a formulated toothpaste makes that product unsafe. Makes it incapable of providing enamel safe whitening. And I think you've also heard that the way the plaintiff tried to support that big claim is through scientific materials. Through these, principally these three journal articles relied on extensively in the complaint. And the fundamental problem with this complaint is that it tries to outrun the science. There is a very big gap between these journal articles on which the plaintiff relies and the claim that the plaintiff is trying to sustain. Just as a logical matter, and given the motion to dismiss posture, I think what Judge Engelmeyer did in Patelis, at least there are some comparable plaintiffs who allege they used charcoal-based toothpaste and had abrasion. And he says, well, there are studies that say toothpaste with charcoal can cause abrasion. Why isn't that sufficient at the motion to dismiss stage? Well, Your Honor, I think in the Patelis case, there was a lot more than that happening. There was a product that was very overtly advertising specific benefits of charcoal, that the charcoal itself will have these whitening and detoxifying properties. And I do think when you look at some of these journal articles, you might be able to conclude, for example, there's a discussion of whitening happening through the same way other whitening toothpastes work, through abrasion. But if the product in Patelis was being advertised as actually there's this detoxifying effect that absorbs stains and that that's not supported, I think that is a very different case. I also think just the way that the Patelis case was briefed and argued, it was really focused on Rule 9B particularity pleading. I'm not sure that anyone actually suggested to Judge Engelmeyer that there may be a problem just in terms of what these underlying articles actually say. I think, though, the plaintiff here recognizes that the way they're trying to support this claim is through these articles, so it's appropriate to look at them and ask, do they support this very big claim that charcoal in any amount supports it? So I think when you actually look at these articles, first of all, they disclaim reaching a conclusion that products with charcoal in it are unsafe. The 2015, which is I think the only actual scientific study which rubbed activated charcoal on resin, actually says we have not proved that charcoal, even actual charcoal, forget about a formulated toothpaste, is unsuitable for oral use. The 2017 literature review, its conclusion is the claimed benefits haven't been substantiated yet. We need controlled studies. So that's a conclusion that the science is not there yet. And then the 2019 British Dental Journal article, when you look at these claims about abrasion, it's actually making a very specific argument. There is a suggestion in that article. What was it proper to – how do you get to consider these kinds of studies in a Rule 12b6 motion? Sure, Your Honor. I think the plaintiff made this their case. The plaintiff, in order to allege, to try to plausibly allege that the inclusion of charcoal in any amount makes a toothpaste unsafe, is relying on these articles. I think it's exactly what this court did in the diet soda cases that you've had over the last few years, the Excavaria case, the Manuel case. I don't want to oversell them. They were unpublished opinions. But I think the approach is quite instructive there. There you had, add a motion to dismiss stage. The plaintiff said the word diet and diet soda connotes appropriate for weight loss, but actually it contributes to weight gain. And there actually were scientific studies. I think the science was probably a step further advanced in those cases that said, we've actually found an association between consumption of diet sodas and weight gain, but it wasn't causal. And the court looked at that. One could cherry pick those studies and certainly find statements of concern about artificial sweeteners. But the court said, no, the complaint relied on these studies to try to make a causal claim, and they just don't get you there. They're getting ahead of the science. And this court affirmed in both of those cases dismissals. And we submit it's exactly the same here, except that the science is actually further behind. In the diet soda cases, you had controlled studies. They just didn't go as far as the plaintiffs needed them to go. Here, the conclusion of the 2017 literature review is what we need are controlled studies, and there's no allegation that that's even happened yet. Why wouldn't it be appropriate? I mean, your adversary says that he can allege additional facts. And here we have a toothpaste that has the word charcoal on it, and presumably that says to the consumer there's some benefit from charcoal. We have some studies that suggest charcoal can be a problem, maybe not in the right amounts, maybe not with the other ingredients in this toothpaste, maybe not in this toothpaste. But why not give him another chance to allege additional facts? Sure, Your Honor. If I could take, I think there was one question there about couldn't this be read to imply that charcoal has a benefit? I don't think, I think I may have heard a suggestion to that effect this morning, but I think in general the claim in this case has been not that P&G advertises charcoal as having a benefit, but that it advertises the toothpaste is providing enamel safe whitening and then charcoal nullifies that. And I think when you look at the box, and I don't think you need to actually look at the physical box, it's on page 20 of the appendix in the complaint, enamel safe whitening in very small letters under the description of it as a fluoride anti-cavity toothpaste, nowhere near any mention of charcoal. So just to sort of put that premise aside. On the question about leave to amend, this is a question about abuse of discretion. The district court had discretion to manage her docket, and what the district court did is Judge Buchwald required a pre-motion letter. There was a pre-motion conference. She told the plaintiff, you've been told about these alleged deficiencies in your complaint. It would be in your interest, the defendant's interest, and my, the court's interest. So if you can fix these deficiencies, you should do it now. And the plaintiff took that opportunity to amend. Didn't correct any of these deficiencies that P&G had pointed out. Then in the briefing in a footnote, totally unexplained, says, well, we would like a chance to amend, but doesn't suggest what the facts would be. So I think it's entirely within the district court's discretion to look at that footnote cursory request for leave to amend and say, but you haven't told me. One, I gave you the opportunity already. I told you that you should really come forward now and not waste the court's time with serial amendments. But even now you're not telling me what it is. I think this morning we've heard we've got a lab ready. We've got dentists. We've got pictures. I'm hearing that for the first time this morning at oral argument. Forget about in the amended complaint or in the briefing in the district court, or it's not even in the briefing before this court. So I think it was entirely within the district court's discretion to say, I told you to give me your best shot and you gave it, and there just wasn't a case. How about the problem that part of that analysis, part of that reasoning, went beyond the allegations in the complaint? It seems to me the kind of thing that would typically be converted into a summary judgment motion in order to reach a conclusion like the district court did. Your Honor, I think at most that might apply to the price premium allegations, which was an independent ground. I think if the court, just on the question of deceptiveness, the court can look at the four corners of the complaint and the material, the journal articles that I think we all agree are incorporated into the complaint. And if the court on de novo review concludes that that just isn't enough there to state a plausible claim, you don't need to reach the price premium and you don't need to get into this question. And conversely, if I think the facts eke out plausibility on deceptive act, consistent with how Judge Engelmeyer concluded in Paillas, then I think you need to address the question about going beyond the complaint with respect to price premium. Yes, Your Honor. I agree. So what I would say on that is that I think when you actually look at the district court's written ruling and not, I think there's been a focus on the oral argument colloquy. Certainly, many an oral argument hypothetical has been derived from experiences a judge has had. I think that can be good fodder for oral argument and feeling out a case. When it came down to the written ruling, I don't see anything in there that suggests I have gone to CVS and found facts. In the motion to dismiss, we did not suggest that the district court should do any extra record fact finding. I think Judge Parker had asked this question before. Isn't it in the websites that you rely on to state a price premium in your own complaint? And the answer to that is yes. What we pointed out in our motion to dismiss is that when you look at the retailers that the plaintiff and the complaint is trying to rely on through these websites that they incorporate, you see Crest 3D whitening with charcoal, without charcoal. It's the same. And in their opposition, I don't think there was any refutation of that, any suggestion that that was wrong, that we need to probe those facts, that if you want to take that into account, it needs to be summary judgment. So at that point, we really had agreement. And then at oral argument, the plaintiff acknowledged, I haven't seen any prices for Crest 3D white without charcoal that are different with charcoal. So I think, you know, one, you don't need to rely, the district court did not need to rely on anything, you know, extra record or outside of what was properly before the court. And certainly in the written ruling itself, there was no reliance on that. Thank you, Your Honors. Thank you. I reserve two minutes for rebuttal. I just want to follow up with the last comment my learned colleague made, and that's regarding the supposed concessions in front of the district court. Those weren't concessions. They weren't part of a fact-finding process. It was literally the judge saying, I went to a CVS. I didn't see any difference in the prices. Will you take my word on it? And what are you supposed to really respond? No, may we have a chance to cross-examine? It just puts us in a position that we shouldn't be put in, where we're having to take a court's word on factual findings without being able to introduce any evidence to the contrary. And I think that's why this should either have been converted to a motion for summary judgment or more likely just given a chance to amend. And I would point out that while we think the complaint is sufficient, I think it's just on all fours with Patelis, which also involves a charcoal toothpaste. The Supreme Court has said to deny amendment without any reason is an abuse of discretion. This is the Foman v. Davis case from 1962, and this is to quote the Supreme Court, outright refusal to grant the leave to amend without any justifying reason appearing for the denial is non-exercise of discretion. It is merely abuse of discretion and inconsistent with the spirit of the federal rules. And I would note again, the district court, while we disagree that the complaint was insufficient, identified for us what it thought the complaint should have had, specifically going back to the transcript, page 87 of the record. You could have hired an expert to tear the thing apart, re-engineer it, find out what's in there, and then have some real science. We could have, going back to Judge Parker's question as to the amount, we could figure that out. We didn't think we needed it. There's other case decisions, Patelis, which don't require that. But we could figure out the amount of charcoal in the product. We could get an opinion as to whether or not that amount in this product was the cause for the abrasion to the teeth. We could put in photographs of the teeth. We could add a lot more. Just one follow-up question. Would you concede that if the amount of charcoal, if there's a threshold, a charcoal threshold below which the inclusion of this additive doesn't matter? I do not know the answer to that. I would defer to an expert, probably a dentist. If you didn't know that, how could you bring this complaint? We based this complaint on the scientific journals that were the same scientific journals relied upon by Judge Engelmeyer in holding that in that case, which is really no different than this case, were sufficient to show that there was a risk of abrasion to the enamel. And I would note, going back to your question, Judge Nathan, as to the opinion of Tellus and why this case is different, and my learned colleagues wanted to try to distinguish. But it really is not, because if you look at the specific section of the decision, this is what Judge Engelmeyer says regarding these studies. The complaint details why the charcoal toothpaste products are, purportedly, not safe for enamel, citing numerous academic sources finding claims to this effect false, and then cites the same scientific journals that we have cited. And again, Engelmeyer is focusing on the not safe for enamel claim, which is the claim that's at issue here. So I think it's certainly unfair to fault Plaintiff's Counsel for drafting a complaint based upon facts another esteemed district court judge has held are sufficient, and then not giving us a chance to replete if, in fact, those were not sufficient when the district court has identified facts that it thought we should add and also not giving us a chance to contest the facts that the district court put in the record as a fact witness which are just wrong. Unless your honors have any further questions, thank you very much. Thank you both, and we'll take the matter under advisement. The next case is Graham v. State University of New York. Good morning, your honors. May it please the court, this case presents the question whether the mere existence of an agreement between a university that is violating Title IX and the Department of Education dispossesses a district court's subject matter jurisdiction over a private action brought for injunctive relief from those violations. My name is Bernays T. Barkley, and I'm representing the appellants in this case.